STEPHEN C. GREEN vs. THE MAYOR AND ALDERMEN OF SA-
VANNAH.

### Certiorari.

Inspection laws may be constitutionally applied not only to the produce of the country to be exported, but to imports brought in for the purpose of sale within the State.

And therefore, an Ordinance of the city of Savannah made under the authority of an Act of the Legislature of Georgia, inflicting a penalty on any person who should sell domestic liquors within the limits of the city, without having them gauged and inspected by the City Inspector, to whom a small compensation was to be paid by the vender, was *held* to be an inspection law, and constitutional, both as to the thing to be done, and the compensation to be made, and that its penalties might be properly enforced against the importer of the liquors, in the original casks, who had *sold* the same, without having them gauged, &c.

The Constitution of Georgia declares that no bill or ordinance shall pass containing any matter different from what is expressed in the title thereof; *held*, that although under this clause so much of a statute as contains matter *different* from what is expressed in the title thereof, will be void, yet that it was enough if the title was descriptive generally of the purposes of the Act, and that it was not necessary that it should particularize the several provisions and amendments contained in the body of the act.

### By LAW, Judge.

UNDER an Ordinance of the city of Savannah, the petitioner *S. C. Green* was fined in the sum of thirty dollars for a violation of said Ordinance, by vending certain casks of liquors, which he had imported from the State of Rhode Island, without having them gauged and inspected according to the provisions of said Ordinance.

The grounds stated in the petition and alleged as error, are 1st. that the Ordinance did not give the corporation the power of fining, in as much as the petitioner was the importer of the articles, and sold them in the original casks.

2. That if the Ordinance does confer such power, it is not authorized by any Act of the Legislature.

3. That if any such Act exists, it, together with the Ordinance,

violates the provisions of the Constitution of the United States, which prohibit a State from laying imposts on exports or imports; and which give to Congress the power to regulate commerce with foreign nations and among the several States.

The Ordinance subjects all persons who sell within the city of Savannah any domestic distilled liquors, without having the same guaged and inspected by the city guager and inspector, to the payment of a fine not exceeding $30. It requires the payment of a small compensation to the officer for the service performed. The Act of the Legislature of 1825. Sec. 16, enacts, that the said Mayor and Aldermen shall have power to pass ordinances (among other things,) for the inspection of all articles and produce sold within the limits of the city of Savannah and hamlets thereof, and to appoint inspectors, guagers, &c. for the purpose of carrying into effect all such ordinances as may be passed by virtue of the authority hereby granted, and to fix their fees, &c. The 11th Sec. of same Act and the 3d Sec. of Act of 1787, authorises the corporation to inflict or impose such pains, penalties or forfeitures as shall be conducive to the good order and government of the city.

The question for the consideration of the Court, then is, whether this Act and Ordinance, when applied to a sale made by the importer of the articles in the original casks or packages, violate the provisions of the Constitution referred to? And first, with reference to that provision which declares, that no State shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws, &c. Under the provisions of the Ordinance, there are two things to be considered, viz: 1. the requirement to have liquors sold within the city guaged, under the penalty prescribed; and 2. the fee allowed to the officer for the service performed. It is not strictly necessary, that I should consider the latter in order to the adjudication of every principle directly pre-

sented by this case; the injury complained of is not the payment of the fee allowed the officer, but it is the fine imposed for refusing to allow the liquors to be guaged. As however, it may be important and desirable to have the question, as to the right to impose the tax for the purpose of the fee decided, I have determined to decide the whole at once. It is obvious from the very words of the exception to the prohibition upon the States in the 10th Sec. 1st Art. of the Constitution of the United States, that the right in the States to pass inspection laws is recognised by that instrument itself. And whilst they are passed in good faith for the purposes for which they were rightfully designed, that is, to improve the quality and condition of articles to be exported, and thus to facilitate their sale, and acting upon articles imported and to be sold within the State, to prevent impositions from being practised on them, whilst these are their objects, and they are not resorted to as a means indirectly of raising revenue, they are unquestionably protected by the exception. The law under consideration is of this class, it is an inspection law, whether we test it by the general signification of the term, or by an examination of its nature, tendency and object. Its direct object is, to improve the quality of liquors vended in the city, and to prevent impositions in the sale of them. Almost every exercise of police power, intended to promote health or to improve or facilitate commerce within the State, is considered as falling under this class of laws, and embraced in the exception to the prohibition relied on. Inspection laws are not confined, as was supposed in the argument of this case, to the produce of the country to be exported, but apply as well to imports brought in for the purpose of sale within the State. The inspection laws of other States act as well upon importations as exportations. Such is the understanding of the Supreme Court of the U. States in regard to them, as is apparent from its remarks in the case of *Brown* vs. *State of Maryland*, (12 Wheat. 438.) And it appears to me from the very nature of the power to be exercised, in order to attain the object of inspection laws, they must frequent-

ly act upon imports as well as the products of the country, otherwise the community would be subjected to all the consequences of unsound and deleterious articles, without the possibility of detection or prevention. But when it is said "No State shall without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws," I apprehend the right to tax imports as well as exports, for the purpose of executing inspection laws, is admitted. It results, that so far as this prohibition in the Constitution affects the question, a State has the right to lay a tax upon imports, the object of which is to pay for services performed in inspecting the articles. I consider it unnecessary to enlarge. I entertain no doubt of the constitutionality of the Ordinance, both as it regards the thing directed to be done and the compensation to be made.

Another ground of error, assigned in the petition, is, that the Act and Ordinance are violative of the right of trial by Jury, as secured to the citizens by the Constitution of the United States and of this State. The question here presented was considered by the Court in the case of *Low* and the *Commissioners of Pilotage,** and its opinion fully expressed upon it, in the decision made in that case. As it regards the Constitution of the United States, there is no question; and I adhere to my views then given upon the words of the Constitution of Georgia, until the opinion of the Judges in convention can be known. There are various grounds taken by the counsel for the petitioner, and which were not stated in the petition. Our rule of Court declares that no other grounds shall be insisted on at the hearing than those stated in the petition for certiorari. I will nevertheless advert to the principal points suggested, as doubts and difficulties have been raised upon the Act of 1825, upon which it may be desirable to have the opinion of the Court.

1st. It is said that the Act of 1825 is violative of the 17th Sec. of the 1st Art. of the Constitution of Georgia, because its title is at

* Supra p. 314.

[Green vs. Mayor and Aldermen of Savannah.]

variance with the body of the Act.    There is no doubt that under this provision of the Constitution, so much of a statute as contains matter different from what is expressed in the title, is void.    The title to the Act of 1825 is professedly to *amend* and consolidate the several acts which have been passed in relation to the *privileges and powers* of the corporation of Savannah.    It can hardly be supposed necessary, I apprehend, to a compliance with the Constitution that every amendment intended to be made should be particularized in the title, or that all the particular amendments, as enacted in the body of the Act, should be specified in the title. An Act, the title of which declares it to be *for the better regulating the town of Savannah*, or to amend or enlarge the powers of the corporation thereof, it is thought, would be sufficient, without enumerating the particulars in which those powers were to be enlarged or extended.    And if this be not so, there is no general Act incorporating a town in Georgia, which is a compliance with this section of the Constitution.    There is no matter contained in the 16th Sec. of the Act of 1825, *different* from what is expressed in the title, and it is that which the Constitution prohibits.*

2d. It is said that the fining power in the 11th Sec. of the Act of 1825, cannot be carried into effect, beause there are pencil interlineations in the original enrolled Act in the Secretary of State's office.    The difficulty of rejecting such interlineations and giving effect to the Act, if enough remained, does not strike me, and this section is perfect, as I understand it, to the proviso.    But the third Sec. of the Act of 1787, confers upon the corporation, in almost the same words, with the Act of 1825, until we reach with the proviso in the latter Act, the power to inflict fines and penalties for a violation of city ordinances.    The amount of the fine in this case does not render it necessary to resort for its authority to the 11th Sec. of the Act of 1825.

---

* See *Smith & Wife* vs. *Oliver*, Adm'r, (Dudley's Rep. 191, *S. P.*)—(*Ed.*)

[Green vs. Mayor and Aldermen of Savannah.]

3d. It is said that the Act only authorises the inspection of merchandize *sold* within the city ; and that the Ordinance directs them to be inspected as soon as they are brought in. It is a rule well understood, that laws of this kind must be construed strictly and according to the letter, and if a case were to occur in which a fine was inflicted, for refusing to suffer the inspection before any sale of the article was made, I do not perceive how the operation of this rule could be avoided—I mean to be understood, that it is the act of subsequent sale, in connexion with the omission or refusal to have the articles inspected, which renders the seller obnoxious to the fine. In the present case the petition itself sets forth the fact that the liquors were sold by the petitioner, and consequently no such question can arise here. I am of opinion that the proceedings of the corporation in this case, ought to be affirmed, and the petition for *certiorari* is therefore *discharged.*

M. H. McAllister, for plaintiff—John C. Nicoll, for def't.